Thursday, October 13. The Judges delivered their opinions.
Judge Tucker.
This suit was originally brought in the County Court of Berkeley in Chancery, by Waggotier, against the appellees, where he obtained a decree in his favour for a considerable sum of money ; upon an appeal to the Chancery Court at Staunton that decree was reversed : and the following errors therein were noticed in the decree of reversal.
First. Because the Court confirmed the report of the commissioners for so much of the account stated by them, (relative to an alleged partnership between Waggoner, David Gray, deceased, and Smith Slaughter, about the year 1784,) as was supported by Smith Slaughter’s deposition alone, he being the same person who is alleged in the bill to have been one of the partners. Secondly ’.' For allowing such parts of the report as charge Gray with monies alleged by Slaughter to have been due to himself from Gray, upon the settlement mentioned in Slaughter’s deposition, and said to have been assumed by Gray, to be paid to Waggoner ; (for account of Slaughter who was also indebted to Waggoner i) there being no memorandum in writing, signed by Gray, or by any one authorised by him, to aid that deposition; or any evidence to prove the release said to have been given from Waggoner to Slaughter. Thirdly. In allowing such parts of the account as *608 charge Gray with interest on an unliquidated account, (between the partners,) and on such items, (military certificates, and indents, granted to individuals for interest on public claims,) as do notin their nature carry interest. And for collecting credits from the books of the intestate Gray, (called for by the bill,) in order to charge his estate,without admitting the debits charged therein. And, Fourthly. For decreeing interest beyond the time of the final decree made in the cause. Of all these reasons for the reversal I per* fectly approve. Nevertheless, I am not altogether satisfied with the Chancellor’s decree. The complainant’s demand is founded, first, upon a partnership, alleged to have been entered into between himself, David Gray, deceased, and Smith Slaughter, about the year 1784. On the 2d of March, 1792, the parties, as the bill alleges, came to a settlement, when, as the bill charges, Gray was found to be considerably indebted, both to Waggoner and Slaughter. But the amount due from him is neither set forth in the bill, nor does it appear, that I can discover, from the scraps of paper referred to as exhibits. For I take it for granted that the account headed “ David Gray, deceased,” is no part of the settlement made by him five years before his death. I take this paper then to be Waggoner’s own account and statement, of which there is no other evidence or proof, in the record, but Smith Slaughter’s deposition, so justly commented upon and rejected by the Chancellor. Secondly. The bill alleges that Slaughter being indebted to Waggoner, he, Waggoner, agreed to take payment in Gray’s hands ; and that he had given Slaughter credit accordingly^ But the bill charges no promise or assumpsit whatsoever, made by Gray, to pay this balance due from Slaughter to Waggoner ; nor is there any proof of such an undertaking, by Gray, except Slaughter’s deposition ; in which he does not pretend to allege that he gave Gray any discharge or acquittance for the money he thus assumed to pay Wag-goner on his behalf, although Slaughter was at that moment about to leave the country to settle in Kentucky. This transaction took place more than five years before *609 death, as I infer from a memorandum annexed to the defendant’s answer,' bearing date July 6, 1797, as a copy from Gray’s books ; and if I am correct, the parties lived in the same County all that time without any demand, or payment made on account of that supposed settlement. But although I may mistake the time that Gray lived alter the supposed settlement ; the suit was not instituted until five years and a half had completely elapsed, from that period. Now, although length of time is no bar between partners, whilst their accounts are going on, yet, dealings having ceased many years between them, and thei'e being an acquiescence in the state of things between them, until the death of one of them, the Court of Chancery will not decree an account with the survivor, but leave the plaintiff to his remedy at law.(a) But this is a stronger case against an account ; for here the bill is brought by the survivor against the representatives of a deceased partner ; whereas in the case cited, the bill was brought against the surviving partner. And even between living partners length of time has been held a good bar to an account, (b) Nor is it necessary for the defendant to such bill, to aver in his answer that he did not promise within six years, (by our law five,) unless particularly charged in the bill.(c) And the rule is, that if open accounts are continued by subsequent acts, they are not barred by the intervention of such length of time as might create a bar in other cases ; but if such account be deserted by the plaintiff, in such case it is barred exactly as if it had been formally closed ; and is taken to have been so. And upon this ground joint assignees have not been permitted to prove against the separate estate, the balance of a long account due from the partner to the partner ship.(d)
Again, where a balance of accounts has been struck between partners, on the dissolution of their partnership, (which is the case alleged in the bill) an action at law will *610 lie for that balance. (a) If then there was a settlement, and Gray found to be indebted to the plaintiff, in a considerable sum, as alleged, the plaintiff might have brought his action at law, upon his assumpsit for this balance, as well as any other just legal claim. But he lies by till Gray’s death, and then brings a bill in Chancery, under pretext of seeking a discovery, against the representatives of Gray, who swear they know nothing at all about the partnership ; or any of the transactions between the parties.
But it may be supposed that the discovery sought, will be a sufficient ground to sustain the bill. His books and papers are called for. The account therein stated is garbled by the commissioners ; whereas it ought, if referred to at all, as evidence, to have been taken altogether. That account, as exhibited in the record, appears to make Wag-goner a debtor, instead of a creditor, to Gray, to a considerable amount. Where a bill seeks a discovery only, the cause ends with the answer. (b) Slaughter being no party to this ’ suit, either as plaintiff or defendant, the plaintiff’s equity was confined to the discovery merely ; for he had no right, separately, to call for an account and settlement of the partnership concerns. For, although a bill, where there has been a great number of partners, has been sustained when brought by a few, in behalf of themselves, and the other partners, except the defendants, yet that is not the case here. Waggoner had but one partner besides Gray, and he does not pretend to sue in his behalf, as well as his own. He wanted to make a witness of him, and therefore neither made him plaintiff nor defendant. Nothing could be done upon such a bill, but to compel a discovery. Relief was out of the question. For, from the discovery sought and made, it would appear that the complainant, and not the defendants, was the debtor. What decree could the Chancellor make in such a case, except to dismiss the complainant’s bill ? I am at a loss for any other upon this state of the case : and think it ought to have been dismissed, not only for this last reason, *611 but because of the staleness of the demand, which with me is a cogent reason in the present case ; and moreover, because the plaintiff’s remedy, if he had any just claim founded on the pretended settlement, and assumpsit to pay Slaughter’s debt, was in a Court of Law. I therefore think the Chancellor’s decree should be so far reversed ; but with costs to the appellees as the parties prevailing.
Judge Roane.
This bill, ¡though very irregularly drawn, seems to have a two-fold object. 1st. To recover from the estate of Gray a sum alleged to be due by Gray to Slaughter, on the partnership and other accounts, as settled in 1792, and which the plaintiff avers was to have been paid by Gray to him, on account of other debts, and not the partnership debts, due to him from Slaughter: and 2dly. To discover and enfoixe a settlement of the partnership accounts, (and private accounts, perhaps, included,) between the estate of Gray and the complainant.
Under the first aspect of the bill, it is to be remarked that it is neither charged that Gray assumed to pay this debt, on behalf of Slaughter, nor that the plaintiff, in consideration thereof, agreed to discharge Slaughter from the payment of it. It is only stated that the plaintiff “ did “ agree there in the presence of Slaughter and Gray, to “ receive of said Gray the sums aforesaid due to Slaughter “ from Gray on account of said partnership, and credit “ Slaughter with the amount.” What is the case made by the bill, then, but that Slaughter still remained the debtor of the plaintiff, who agreed to receive and credit him for monies paid by his debtor, as if paid by himself? The allegation of the bill that the plaintiff (perhaps years alter the transaction in question) had actually “ given Slaughter “ such credit,” is not an allegation of a complete discharge, or if it were, it is supposed this, the agreement relied on, is to be viewed as it stood at the time it was entered into.
Our act of frauds is precisely similar to that of England touching the point in question, and the distinction between an original, and collateral promise has been often and *612 solemnly settled in that country. That distinction seems to be this; that where the person on whose behalf the promise is made, is not discharged, but the person promising agrees to see the debt paid, so that the promisee has a double remedy, the promise is considered as collateral and must be in writing; but where the promiser undertakes to become the paymaster it becomes immediately his debt and he is liable without writing. (a) To apply this doctrine to the case before us, Gray did neither promise to pay the debt in question; or, if he did, the effect thereof was only to see the debt paid, the original debtor being still held responsible. Gray, therefore, could not be charged on such a promise unless it were in writing. It is of no importance, to weaken this conclusion, that Gray was in effect paying his own debt: paying it to the plaintiff instead of Slaughter. This only proves that he had a consideration for his promise, viz. his paying his own debt to, or getting discharged from the claim of Slaughter. In the case of a collateral promise a consideration is always necessary, and the statute which requires a -writing does not dispense therewith.(b) This case then is not different from the ordinary one, on the point of the consideration. Tbe debt was originally, and still continues, (he not being discharged,) the debt of Slaughter; and the promise in question is, therefore, a promise to pay the debt of another.
This view of the case makes it unnecessary to discuss the legality of Slaughter's testimony; inasmuch as if there were fifty unexceptionable witnesses, they would not enable us to get over the objection arising out of the statute. I will merely say, however, that I do not at present see that he is disinterested. His not shewing a discharge otherwise than by his own testimony, and the release in the record not being proved, it would be of dangerous consequence to permit him to recover (as it were) a debt of his own, by his own testimony.
As to the other aspect of the case; in a suit for settling the concerns of a copartnery, every partner should be *613 made a party, so that a complete and final decree may be rendered among the parties. I therefore, concurring with the Chancellor in the grounds of the decree he has rendered, as far as he goes, think he erred in proceeding to a final decree until Slaughter was made a party. In this position, I am warranted by the opinion of this Court, in the case of Taliaferro v. Thornton, and many other cases which have been decided. But this ground of reversal being for the benefit of the appellee, and the appellant not having complained of it, or demanded that Slaughter should be made a party in his bill, the appellee is entitled to his costs as the party prevailing.
Judge Fleming.
I am of opinion that the decree of the Superior Court of Chancery, reversing that of the County Court of Bevkely, is correct so far as it goes, for the reasons therein stated. 1st. In rejecting so much of the account stated in the report of the commissioners, as is supported by the deposition of Smith Slaughter alone. 2dly. In rejecting so much of the report, as charges the defendant’s intestate with monies, alleged by the said Slaughter to have been due to himself from the said intestate, and by him to have been assumed to be paid to the complainant; it appearing to me that Slaughter, notwithstanding the pretended release, to which there is no witness, was an interested, and, therefore, an incompetent witness. 3dly. In rejecting so much of the report, as charges the defendant’s intestate with interest on an unliquidated account, and on such items as do not in their nature cany interest, and so much thereof as collects credits from the books of the intestate, in order to charge his estate without allowing the debits charged therein. 4thly. For the error of the County Court in decreeing interest on items not carrying interest, in terms to be computed till the time of payment, and beyond the time of entering their final decree. -
I am, therefore, for affirming the decree of the District Court of Chancery, with a small addition, instead of dis *614 missing the bill of the appellant, who has, probably, a just claim for something against the estate of the intestate Gray, which I would not preclude him from pursuing by any legal means in his power; making Slaughter a party, which seems to be necessary, as the whole appears to have arisen from the partnership of the parties which commenced in the year 1784.

 2 Vern. 276. Sherman v. Sherman.

 Watson’s La Partn. 208 D blin edit. 212 Alb edit. 304 Farrand’s edit. cites Bridges and Mitchell. Gilb. Eq. Rep. 224.

 Gilb Eq. Rep. 225. Bodvil v. Bishop of Meath, cited in Watson, ut supra.

 Wats. L. Partn. ubi supra.

 2 Term Rep. 483. Moravia v. Levy. Ibid. 479. Foster v. Allanson, cited in Watson on Partn. 218 Dublin edit. 221 Alb. edit. 292 Farrand’s edit.

 2 Bro. Ch. 10. Hindman v. Taylor.

3) Roberts on Stat. Frauds, 223.

4) Ib. 207, 208.